UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL BARLETTA,<br>    Plaintiff,<br><br>    v.<br><br>HARRY W. RILLING, CHIEF OF<br>POLICE FOR THE CITY OF NORWALK,<br>and CITY OF NORWALK,<br>    Defendants. | No. 3:11cv990 (SRU) |

## MEMORANDUM OF DECISION

Michael Barletta, a convicted felon, brings this action under 42 U.S.C. § 1983 against the City of Norwalk and Harry W. Rilling, Chief of Police for the City of Norwalk, seeking compensatory and punitive damages, and injunctive and other appropriate relief for alleged violations of the Fourteenth Amendment. Barletta claims that the defendants unlawfully deprived him of a license to trade in precious metals. He challenges the constitutionality of Conn. Gen. Stat. § 21-100(a),[1] which prohibits the issuance of a precious metals license to persons convicted of any felony. Barletta argues that section 21-100(a) is invalid on both equal protection and due process grounds; in other words, it is unconstitutional for the State to mandate that a licensing authority automatically deny a license to trade in precious metals to any applicant with a felony conviction. For the reasons that follow, I conclude that section 21-100(a)'s categorical

---

[1] As revised effective October 1, 2012, Conn. Gen. Stat. § 21-100(a) provides, in pertinent part: "No person may engage in or carry on the business of purchasing gold or gold-plated ware, silver or silver-plated ware, platinum ware, watches, jewelry, precious stones, bullion or coins unless such person is licensed as a precious metals or stones dealer by the licensing authority of the municipality in which such person intends to carry on such business . . . . The license may be revocable for cause, which shall include, but not be limited to, failure to comply with any requirements for licensure specified by the licensing authority at the time of issuance. *The licensing authority shall refuse to issue a license under this subsection to a person who has been convicted of a felony* and may require any applicant for a license to submit to state and national criminal history records checks. . . ." (emphasis supplied).

disqualification of all persons who have ever been convicted of a felony is unconstitutional.

**I.      Background**

The basic facts are undisputed. Barletta previously held a precious metals license, which expired in 2003. In 2006, Barletta was convicted of narcotics distribution, a federal felony, and served three years in prison. In April 2010, he applied to Norwalk Police Chief Rilling for a license to trade in precious metals, pursuant to Conn. Gen. Stat. § 21-100. Based on the language of section 21-100(a), Chief Rilling denied Barletta's application. In response, Barletta filed this action. He alleges that section 21-100(a) violates the Equal Protection and Due Process clauses of the Fourteenth Amendment. Because the material facts are not in dispute, defendants moved for summary judgment. On January 29, 2013, at oral argument, the parties agreed to submit the case to the court for a decision on the stipulated record. This opinion constitutes my findings of fact and conclusions of law for purposes of Rule 52(a) of the Federal Rules of Civil Procedure.

**II.     Discussion**

   A.  Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Supreme Court has long held that "a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080 (2012) (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)).

Section 21-100(a) involves neither a "fundamental right" nor a "suspect" classification. Possession of a license to trade in precious metals is not a fundamental right. *See Medeiros v. Vincent*, 431 F.3d 25, 32 (1st Cir. 2005) ("The right to 'make a living' is not a 'fundamental right' for either equal protection or substantive due process purposes.") (citing *N.Y. State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1309-12 (2d Cir. 1994)); *Smith v. Walsh*, 519 F. Supp. 853, 858 (D. Conn. 1981) ("Nor is there any fundamental right to obtain a license to practice a certain profession."); *Smith v. Fussenich*, 440 F. Supp. 1077, 1079-80 (D. Conn. 1977) (applying rational basis review to a statute denying detective licenses to felons). And convicted felons are not a suspect classification. *See Romero v. Pataki*, 241 F. App'x 764, 766 (2d Cir. 2007) ("Convicted felons, however, are not a suspect class."); *Zipkin v. Heckler*, 790 F.2d 16, 18 (2d Cir. 1986) ("incarcerated felons are not a suspect class"); *Morgan v. City of Milford*, 914 F. Supp. 21, 24 n.1 (D. Conn. 1996) ("Felons have not been found to be members of a protected class for Fourteenth Amendment purposes."). Accordingly, for purposes of an Equal Protection Clause analysis, the statute is subject to rational basis review.

Under the rational basis test, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440. Thus, not surprisingly, statutes have only rarely been invalidated after rational basis review. "In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group." *Romer v. Evans*, 517 U.S. 620, 632 (1996). But the "ordinary case" is a law that is "narrow enough in scope and grounded in a sufficient factual context for us to ascertain some relation between the classification and the purpose it served." *Id.* at 632-33.

Rational basis review is highly deferential, but the standard is "not a toothless one." *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981) (quoting *Mathews v. Lucas*, 427 U.S. 496, 510 (1976)). If it is a test with meaning—if it has "teeth"—rational basis review must mean something beyond absolute deference to the legislature; otherwise it is not review at all. Rational basis review "imposes a requirement of some rationality in the nature of the class singled out." *Rinaldi v. Yeager*, 384 U.S. 305, 308-09 (1966). "[L]egislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.'" *Id.* at 309 (quoting *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966)). Thus, even where a state can identify a legitimate purpose in support of a statute, the state "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary and irrational." *Cleburne*, 473 U.S. 432, 446 (1985) (citation omitted).

The State of Connecticut has identified a reasonable legislative goal—decreasing fraud in the trade of precious metals. In its amicus brief, the State argues that the statute's blanket denial of precious metals licenses to all persons who have ever been convicted of a felony is designed to "discourage crime in a business that has a history of attracting criminal dealers and customers, protect legitimate businesses from illegal competition, protect legitimate customers from fraud, and increase the safety of local communities." Br. for Amicus Curiae [doc. # 43] at 2. To achieve those ends, the State excludes all felons from the industry. And it is that choice—the decision to decrease fraud in an industry by excluding an entire group of people who are defined by their status as felons—that is challenged in this case.

The Connecticut Legislature has made the existence of a felony conviction a proxy for an examination of an individual's background, character and suitability for licensure. According to the State, allowing any person ever convicted of any felony to obtain a precious metals license poses an unacceptable risk of encouraging crime, permitting illegal competition with legitimate business, exposing customers to fraud, and decreasing the safety of local communities. The State's goals are legitimate, but the ban is so far-reaching that its service of these goals is diluted to the point of coincidence. A proxy that serves its purpose only by happenstance is arbitrary and fails rational basis review.

It is the State's failure to link the bar on felons to service of its legitimate goals that dooms the statute. "[E]ven in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be obtained. The search for the link between classification and objective gives substance to the Equal Protection Clause . . . ." *Romer*, 517 U.S. at 632. The State implies that the link is simply that all felons are people who are likely to commit fraud, illegally compete, and threaten the safety of the community. But the breadth of the statute "is so far removed from these particular justifications that we find it impossible to credit them. . . . It is a status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests . . . ." *Id.* at 635.

Placing limitations on employment opportunities for persons convicted of a felony through occupational licensing regimes is an unfortunately familiar legislative device. Often licensing regimes give licensing authorities discretion to deny, revoke or suspend a license to a convicted felon. In Connecticut, for example, a felony conviction may impact one's ability to hold pharmacist, physician, attorney, plumber, barber, athletic trainer, or certified public

accountant licenses.  Discretion to grant or deny licensure based on individualized determination of ability or fitness alleviates the obvious disconnect between many felony offenses and the occupational license being sought.  *See Schware v. Board of Exam'rs of State of N.M.*, 353 U.S. 232, 239 (1957) ("A State can require high standards of qualification, such as good moral character or proficiency in its law . . . but any qualification must have a rational connection with the applicant's fitness or capacity . . . .").  A categorical bar on licensure of persons with felony convictions is less common and obviously more problematic.

When Connecticut's precious metals licensing requirement was first adopted in 1980, the law granted the local chief of police discretion to grant or deny licensure, but did not include specific guidelines for the chief of police to use to determine whether to accept or reject an applicant.  The following year the legislature determined that the licensing requirement did not stop unscrupulous dealers from setting up shop in Connecticut.  To cure that perceived defect, a bill was proposed that "would authorize the local licensing authority, that is either a Chief of Police or First Selectman, to refuse a license of [sic] an unsuitable person."  24 Conn. H. R. Proc., Pt. 10, 1981 Sess., 3443 (April 28, 1981) (Remarks of Rep. Carragher).  By amendment, however, the final bill deleted "unsuitable person" and substituted "a person who has been convicted of a felony," *id.*, and, importantly, transformed the authority to refuse to issue a license into a statutory bar that prohibited the issuance of a license to felons.  That change replaced a merit-based determination of suitability for a status-based bar of every person ever convicted of a felony.  An amendment initially designed to give guidance to the discretion exercised by the Chief of Police became a law that left that discretion bounded in only one way: anyone other than persons convicted of a felony could obtain a precious metals license.

Indeed, by substituting a felony conviction bar for an individualized determination of suitability for licensure, the legislature rendered section 21-100(a) standardless. The statute provides the licensing authority, here the Chief of Police, no guidance whatsoever about whom to grant licenses and whom to deny, other than he cannot grant a license to anyone ever convicted of any felony. Thus, the statute does not direct the licensing authority to base licensing decisions on, for example, education, training, business experience, past experience (good or bad) as a licensee, or even the likelihood of engaging in illicit activity. Although the statute does not bar persons who had actually defrauded customers of a precious metals business from obtaining a precious metals license, provided they were not prosecuted or received only a misdemeanor conviction for such fraud, it does prevent all persons convicted of a felony unrelated to fraud or the precious metals business from even arguing they were suitable applicants for licensure. The statute, in other words, is both grossly over-inclusive and grossly under-inclusive as a proxy for serving the State's stated goals. To survive even rational basis review, the defendants and the State must do more than suggest that *some* felons would be unsuitable for licensure. Most irrational classifications, for example, left-handed people, obese people, people with tattoos, people born on the first day of the month, divorced people and college dropouts, will include *some* persons properly excluded from licensure. Such occasional coincidence between membership in the excluded class and the purpose of the licensing requirement is not sufficient "to advance a legitimate government interest"; it does not supply the link required by *Romer*.

A rational nexus between a conviction for any and every felony offense and the fitness to act as a precious metals dealer simply does not exist. The legislature has not drawn any distinctions beyond the classification of felon; it has not written the statute to conform to the

legitimate state interest of protecting the public from unscrupulous dealers.  Many unsuitable applicants can obtain licenses, yet many suitable applicants cannot.  Felony crimes range widely, and many do not implicate the purposes identified by the State as justifying the ban.  Federal felonies include mishandling of environmental pollutants, draft dodging, and certain offenses involving fish, wildlife and plants.  State felonies include violating a sexton's burial duties, illegally assisting a disabled voter, injuring a peace officer animal, and violating pollution requirements.  *See* OLR Research Report, 2012-R-0358, Unclassified Felonies (2012). Many, if not most, of the hundreds of federal felonies and more than 265 Connecticut felonies, have no tendency whatsoever to predict unsuitability for licensure based on the interests that the State claims section 21-100(a)'s felony bar was enacted to protect.  *See Fussenich*, 440 F. Supp. at 1080 ("The legislation fails to recognize the obvious differences in the fitness and character of those persons with felony records. Felony crimes such as bigamy and income tax evasion have virtually no relevance . . . .").

At the same time, many misdemeanors reflect conduct that seems to be more relevant to the state's legitimate goals than the conduct underlying many felonies.  For example, illegal sale of used motor vehicle parts, illegal ticket scalping, issuing a bad check, and forgery are all misdemeanors.  Moreover, the fortuity of plea bargaining may reduce felonious conduct to a misdemeanor conviction—or not, depending on the quality of legal counsel, the exercise of prosecutorial discretion, and the proclivities of different judges.  These realities highlight the under-inclusiveness of the use of a felony bar to licensure.  Failing to include every possible criminal violation in the statute does not make the statute unconstitutional.  *See Cleburne*, 473 U.S. at 458 ("'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind'") (quoting *Williamson v. Lee Optical of*

*Oklahoma*, 348 U.S. 483, 489 (1955)).  But this failure does underscore the irrationality and arbitrariness of the statute's classification.  *See Fussenich*, 440 F. Supp. at 1080 ("In addition, the enactment makes an irrational distinction between those convicted of felonies and those convicted of misdemeanors.").

The classification is overbroad in two other ways; it fails to distinguish among felons in terms of when they were convicted and how severely they were sentenced.  Persons sentenced to probation are treated the same as those sentenced to lengthy prison sentences.  "The purposes for the enforcement of the criminal laws are the punishment and the rehabilitation of the guilty." *State v. Trantolo*, 209 Conn. 169, 173 (1988) (Healy, J., dissenting); *see also State v. AFSCME, Council 4, Local 2663, AFL-CIO*, 59 Conn. App. 793, 815 (2000) (Landau, J., dissenting) ("Our legislature has enacted a law declaring that society is best protected when criminals are rehabilitated and returned to society.").  By absolutely banning convicted felons from receiving a precious metals license, the ban prohibits consideration of the nature and severity of the crime, the nature and circumstances of an applicant's involvement in the crime, the time elapsed since conviction, and the degree of the applicant's rehabilitation.  The statute does not provide any other criterion, even "good moral character," to deny a precious metals license.  "Arbitrary selection can never be justified by calling it classification."  *McLaughlin v. State of Fla.*, 379 U.S. 184, 190 (1964) (internal quotation marks and alteration omitted).

The statute is irrational because the ban on felons is insufficiently related to the purpose of the statute.  Without a meaningful relationship between the absolute bar on felons from holding a precious metals license and the legitimate state interest of protecting the public from unscrupulous precious metals dealers, the ban violates the Equal Protection Clause.  *Cf. Green v. Missouri Pacific Railroad*, 523 F.2d 1290, 1298 (8th Cir. 1975) ("We cannot conceive of any

business necessity that would automatically place every individual convicted of any offense, except a minor traffic offense, in the permanent ranks of the unemployed. . . . To deny job opportunities to these individuals because of some conduct which may be remote in time or does not significantly bear upon the particular job requirements is an unnecessarily harsh and unjust burden.").  The State's goals are legitimate, but the rational basis test requires not merely a legitimate goal but a rational connection between the goal and the classification used to further that goal.  The State has not explained how the absolute ban on licensure of felons furthers the goals it has identified.  That much it must do to survive even rational basis review.  Accordingly, I conclude that the State's complete ban on felons holding precious metals licenses constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment.[2]

   B.  Due Process

Barletta claims to have a property interest in a precious metals license because he had previously held the license prior to his felony conviction. Barletta claims that the subsequent denial of the license because he had a felony conviction was a denial of due process.

To show a violation of due process, a plaintiff needs to show he had a protected property interest in the license.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  Barletta must have had "more than a unilateral expectation" that his expired license would have been renewed to have a property interest.  *Bd. of Regents v. Roth*, 408 U.S. 546, 577 (1972).

---

[2] This conclusion is not undercut even if felons can lawfully be deprived of the fundamental right to vote without violating the Equal Protection Clause.  Although Section 2 of the 14th Amendment can be read to imply that states can constitutionally deny the right to vote to persons "for participation in rebellion, or other crimes," that language addresses who counts for purposes of apportioning representatives among the states; it does not exempt the class of felons from the application of the Equal Protection Clause nor does it permit states to treat felons irrationally.  Moreover, Connecticut grants a statutory right of restoration of electoral privileges to felons following release from imprisonment, *see* Conn. Gen. Stat. § 9-46a, but does not grant a right of restoration of eligibility for precious metals licensure.  Thus, even felons who can vote in state and federal elections are barred from obtaining a Connecticut precious metals license.

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Loudermill*, 470 U.S. at 538 (quoting *Roth*, 408 U.S. at 577). Nothing in state law or custom gave Barletta a property right to a precious metals license. Therefore, Barletta's due process claim fails.

## III.   Conclusion

I conclude that Conn. Gen. Stat. § 21-100(a) violates the Equal Protection Clause and that Barletta is entitled to declaration saying so. Barletta is also entitled to injunctive relief against the enforcement of the statute, meaning he is entitled to consideration by the Chief of Police for a precious metals license. To be clear, this ruling does not grant Barletta a precious metals license; should Barletta reapply for a precious metals license, the Chief of Police may consider the existence and circumstances of Barletta's felony conviction, among other factors, when determining whether he should be granted a license. Barletta is not entitled to compensatory damages. A municipality is only liable for constitutional violations when the municipality has a policy or custom that causes those violations.[3] *See Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 691 (1978). In this case, the City of Norwalk was enforcing a state statute; its rejection of Barletta's application was a ministerial act, not the formation or reflection of City policy. Punitive damages may not be awarded either, because municipalities are immune from punitive damage awards under section 1983. *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 262 (2d Cir. 1997).

Judgment shall enter declaring Conn. Gen. Stat. § 21-100(a) unconstitutional. The

---

[3] Barletta sued Chief Rilling in his official capacity only. Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 690 n.55 (1978)). Barletta's claims against Chief Rilling are treated as claims against the City of Norwalk.

defendants are hereby permanently enjoined from enforcing the statute's bar to licensure of felons. The clerk shall enter judgment and close this case.

    It is so ordered.

    Dated at Bridgeport, Connecticut, this 26th day of September 2013.

                                              /s/ Stefan R. Underhill
                                              Stefan R. Underhill
                                              United States District Judge